[Crim. No. 7073. Third Dist. Mar. 13, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES CALAIS, Defendant and Appellant.

## COUNSEL

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., and Jack R. Winkler, Chief Assistant Attorneys General, William E. James, Assistant Attorney General, Arnold O. Overoye, Joe E. Carey and G. Michael Gates, Deputy Attorney General, for Plaintiff and Respondent.

James D. Arditto for Defendant and Appellant.

## OPINION

**REGAN, J.**—On February 25, 1972, defendant, pursuant to a plea bargain, plead guilty to a violation of section 11531 of the Health and Safety Code (sale of marijuana). Judgment was suspended and defendant was placed on probation for two years on the condition he serve six months in the county jail. Another condition was that defendant "submit his person and property to search [and] seizure at any time of the day or night by any law enforcement officer, with or without a search warrant."

On March 7, 1973, a violation of probation report was filed in the Amador Superior Court. A complaint (also dated March 7, 1973) charging defendant with burglary (Pen. Code, § 459) and two counts of receiving stolen property (Pen. Code, § 496) was attached to and incorporated by reference in the violation report.

On March 14, 1973, defendant appeared with counsel and a hearing on revocation of probation was held. Defense counsel requested the matter be continued until March 23. At the conclusion of this hearing the court found defendant had violated the terms of his probation, denied the motion for a continuance and referred the matter to the probation officer.

On March 30, 1973, a hearing was held on the probation report. Thereafter, the court ordered that defendant be confined to state prison. On April 2, 1973, the criminal charges were dismissed on the People's motion.

The testimony at the hearings established to the court's satisfaction, and the court found, that defendant had unlawfully forced entry into the cabin of another person, removed four guns therefrom and took them to his own home.

He now appeals from the judgment, contending the revocation of his probation did not accord with the due process requirements set forth in *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593].

*Morrissey* held that a parolee is entitled to two separate hearings. The function of the first or preliminary hearing is to determine whether there is probable cause to believe that the arrested parolee has committed acts which would constitute a violation of parole conditions. The second hearing—the revocation hearing itself—must meet the following requirements of due process: "(a) written notice of the claimed violations of parole: (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and the reasons for revoking parole." (408 U.S. at p. 489 [33 L.Ed.2d at p. 499].)

Even though *Morrissey* was concerned with parole revocation, the due process requirements delineated therein are equally applicable to the revocation of probation. "Although we are not confronted with a revocation of parole but rather with proceedings for the revocation of probation granted after conviction and imposition of sentence, we cannot distinguish such proceedings in principle insofar as the demands of due process are concerned. The recognition that aside from an act of clemency a grant of parole is an integral part of the penological system intended to help those convicted of crime to integrate into society as constructive individuals as soon as possible and alleviate the cost of maintaining them in custodial facilities, is equally applicable in the case of a grant of probation. The characterization of a grant of probation as a privilege rather than a right is also, as in the case of a grant of parole, no longer of significance. Certainly the nature of a probationer's interest in his liberty, not necessarily ever having been an inmate of a prison or a jail, is at least as great as that of a parolee and is entitled to at least the same due process safeguards before it is terminated. *Morrissey* is thus equally applicable in the case of a revocation of probation insofar as it assures that revocation can be had only with due process protections." (*People* v. *Vickers* (1972) 8 Cal.3d 451, 458 [105 Cal.Rptr. 305, 503 P.2d 1313].)

Defendant contends the hearing on his probation did not satisfy or meet due process requirements as set forth in *Morrissey* in the following particulars: (1) No preliminary (or probable cause) hearing was ever conducted; (2) the trial court, when it revoked defendant's probation on March 23, 1973, gave no statement of reasons; (3) defendant was not, prior to final hearing, informed that there was probable cause to revoke his proba-

tion; (4) defendant was not informed, prior to final hearing, of the reasons which the court relied upon to believe there was probable cause; and (5) defendant was not allowed to interrogate the probation officer (Mounter) with regard to his probation report.

The issues presented appear to be without any reported California precedent to date.[1] Further, *Morrissey* dealt with parole revocation and not revocation of probation. Even though the due process requirements of Morrissey do apply to the latter (see *People* v. *Vickers, supra*), there are inherent differences in the two procedures. *Vickers* provides us with the only two rather general guides: "[T]he precise nature of the proceedings for such revocation [of probation] need not be identical if they assure equivalent due process safeguards." (8 Cal.3d at p. 458.) "We do not read *Morrissey* as precluding the holding of the two proceedings in close or immediate sequence to each other providing that the due process protections declared in that decision are not infringed." (*Id.* at p. 459, fn. 8.)

With these two guides in mind, we conclude that the procedures utilized herein, with one exception, were in substantial compliance with *Morrissey*. Although no preliminary hearing was held, it must be remembered that we are here concerned with a revocation of probation and not a parole situation. The proper jurisdiction for the revocation of probation is in the superior court. On March 14, defendant appeared at the formal revocation hearing with counsel after proper notice of the alleged violations. Our review of the record reveals that the due process safeguards guaranteed by *Morrissey* and *Vickers* were afforded defendant at the two hearings. The evidence adduced shows there was reasonable and probable cause to believe that defendant had violated the terms of his probation. Although no formal statement of reasons was given for the revocation, none was required under the circumstances since defendant was present with counsel and had been apprised of the charges. In effect, the hearings on March 14 and March 23 amounted to a simultaneous preliminary and formal hearing. Under the broad guidelines set forth in *Vickers, supra,* such a procedure would appear to conform with the requirements enunciated in that case.

However, there is one matter that troubles us. Despite repeated requests, the trial court refused defense counsel the right to examine the probation officer who prepared the report recommending that probation be revoked and defendant be sentenced to state prison. *Morrissey* specifically guarantees a defendant the right to confront and cross-examine adverse witnesses unless the hearing officer specifically finds good cause for not allowing con-

---

[1] Most of the reported cases so far have found *Morrissey* to be inapplicable since that decision operates prospectively only. (See, e.g., *In re Thomas* (1972) 27 Cal. App.3d 31, 37 [103 Cal.Rptr. 567].)

frontation. (408 U.S. at p. 489 [33 L.Ed.2d at p. 499].) Although a probation officer is not necessarily an adverse witness, in the context of this case we believe he could be characterized as such. As to "good cause," the trial court apparently felt no useful service would be served and denied the defendant's request: "THE COURT: I can see no point to his [probation officer] testifying as he has already given us a very elaborate report here."

We think the trial court misinterpreted *Morrissey* and *Vickers*. It was the report, and the investigation leading to its preparation, that defendant wanted to attack. He was denied this opportunity and therefore we conclude that the trial court abused its discretion.

We next examine the question what result should follow from the denial to defendant of his right to confront an adverse witness without good cause being shown. An orthodox disposition of this case would be to reverse the judgment and direct the superior court to reopen the hearing with defendant and counsel present for the purpose of examining the probation officer. Judicial relief is necessary for "denial of fundamental constitutional rights is not excused by want of prejudice." (*People* v. *Linden* (1959) 52 Cal.2d 1, 33 [338 P.2d 397].) We have concluded the orthodox approach should be adopted here (cf. *In re Castaneda* (1973) 34 Cal.App.3d 825, 833 [110 Cal.Rptr. 385]), and will so order the court below.

■ The court apparently also found that defendant had unlawfully taken a set of scales, the property of Amador County.

Defendant now contends the scales were unlawfully seized. He argues that *People* v. *Mason* (1971) 5 Cal.3d 759 [97 Cal.Rptr. 302, 488 P.2d 630] should not be followed today in light of *Morrissey* and *Vickers*.

In *Mason* the court states (at pp. 764-765): "Defendant contends that a probation condition which requires submission to a warrantless search constitutes an unreasonable invasion of his Fourth Amendment rights. We have therefore suggested, however, that persons conditionally released to society, such as parolees, may have a reduced expectation of privacy, thereby rendering certain intrusions by governmental authorities 'reasonable' which otherwise would be invalid under traditional constitutional concepts, at least to the extent that such intrusions are necessitated by legitimate governmental demands. [Citations.] Thus, a probationer who has been granted the privilege of probation on condition that he submit at any time to a warrantless search may have no reasonable expectation of traditional Fourth Amendment protection."

The consent to search was a condition of defendant's probation. Thus,

the search and seizure were proper under *Mason*. (See also *Russi* v. *Superior Court* (1973) 33 Cal.App.3d 160, 168 [108 Cal.Rptr. 716].) We find nothing in either *Morrissey* or *Vickers* which would alter this rule.

Further, assuming that the scales were unlawfully seized (which we do not concede), they may still be properly considered in a hearing on the revocation of probation, for "evidence obtained as a result of an illegal search and seizure can be used by the court for the limited purpose of determining whether a convicted defendant's probation should be revoked." (*People* v. *Hayko* (1970) 7 Cal.App.3d 604, 610 [86 Cal.Rptr. 726].)

Defendant contends it was not clearly and satisfactorily shown that he violated any condition of his probation. This contention has no merit.

The applicable principles are set forth in *People* v. *Hayko, supra,* 7 Cal. App.3d at page 609: "The general principles of law governing probation are clear. ■ The revocation of probation is a matter of discretion. [Citations.] A court is justified in revoking probation even though the circumstances would not warrant a conviction. [Citation.] All that is required is that the grounds for revocation be clearly and satisfactorily shown; they need not be established beyond a reasonable doubt. [Citation.] Penal Code section 1203.2 provides that a court may properly revoke probation whenever it has reason to believe that the probationer is violating any of the conditions of his probation or is engaging in criminal activities. [Citation.]"

We find the evidence in this case meets the above-stated requirements. The most that can be said for defendant's contention is that there was some contradictory evidence. However, the resolution of that matter was for the trial court. It elected to resolve the conflict against the defendant. We can find no error in this decision.

The order revoking probation is affirmed. The judgment sentencing defendant to state prison is reversed and the cause is remanded for further proceedings in accordance with the views expressed herein.

Richardson, P.J., and Vasey, J.,* concurred.

A petition for a rehearing was denied April 10, 1974, and the judgment was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied May 8, 1974.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.